

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SSS:FJN
F. #2018V03079

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 14, 2018

By ECF

The Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Chiang T. Cheng
              Criminal Docket No. 90-1019 (RJD)

Dear Judge Dearie:

      The government respectfully submits this letter in opposition to defendant Chiang T. Cheng's July 31, 2018 pro se Motion for a Reduction of Sentence pursuant to Title 18, United States Code, Section 3582(c). Because Amendment 794 to the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") does not apply retroactively, the Court lacks jurisdiction to adjudicate the defendant's motion. Moreover, even if the Court had jurisdiction, the defendant would not be entitled to a reduction in his sentence based on his role in the violent "Green Dragons" case, including his involvement in three murders and one rape committed at gunpoint.

I.     Background

      On April 4, 1992, the defendant was convicted after trial of nine felonies, including three counts of murder and three counts of conspiracy to murder in relation to his role with the Green Dragons. PSR ¶¶ 1-15. As described by the Second Circuit, the Green Dragons gang was "a violent gang that operated principally in the predominantly Chinese sections of Elmhurst and Flushing in Queens, New York." United States v. Wong, 40 F.3d 1347, 1355 (2d Cir. 1994). "The members primarily extorted 'protection' money from Chinese-run businesses, but also engaged in periodic armed robberies. They frequently employed violence to defend and expand their turf, assaulting, kidnapping, and murdering rival gang members, potential witnesses, and businessmen who refused to pay protection money." Id.

A. <u>Offense Conduct</u>

1. The Murder of Chung Pui Yan (Count 1 (RICO Acts 1A and 1B), Count 2, Count 4)

On May 2, 1989, the defendant and two co-conspirators drove to the Broadway Noodle Restaurant in Queens, New York, to kill the owner of the restaurant, Chung Pui Yan, on the orders of a Green Dragons leader. The murder was in retaliation for a prior altercation involving an employee of the restaurant. The two co-conspirators entered the restaurant and shot and killed Yan while the defendant waited in the getaway car. PSR ¶¶ 23-24.

2. The Murder of Mon Hsiung Ting and Anthony Gallivan (Count 1 (RICO Acts 2A, 2B, 2C, 21), Count 2, Count 6, Count 7)

In July 1989, a Green Dragons leader ordered the murder of Mon Hsiung Ting, the manager of the Tien Chiau restaurant in Queens, New York, because he had refused to pay protection money to the Green Dragons. PSR ¶ 25. On July 16, 1989, the defendant and two co-conspirators drove to the restaurant. The co-conspirators entered the restaurant and shot Ting nine times at close range, and he died later that day. A patron of the restaurant, Anthony Gallivan, was struck in the back by a stray bullet and instantly killed. Another patron, Greg Hyde, was shot and suffered spinal damage, causing partial paralysis from the waist down. <u>Id</u>. The defendant and the two co-conspirators then returned to a Green Dragons safe house and reported on the murder to Green Dragons leaders. <u>Id</u>.

3. The Murder of Kin Tai Chan (Count 1 (RICO Acts 3A and 3B), Count 2, Count 8)

On August 23, 1989, the defendant and a co-conspirator drove to a residence in Queens, New York, occupied by a rival gang leader to kill him, on the orders of Green Dragons leaders. PSR ¶¶ 27-28. The defendant and his co-conspirator drove to the residence and saw the rival gang leader standing outside. PSR ¶ 28. The two pulled up beside the rival gang leader and the co-conspirator left the car and said, "you know what this is for," and then shot the rival gang leader once in the head and nine times in the body. <u>Id</u>.

4. The Robbery and Rape in Queens (Count 1 (RICO Acts 9A and 9B))

On January 23, 1990, Green Dragons leaders decided to rob a Mah Jongg gambling game in Queens, New York. That evening, the defendant and five co-conspirators went to the location where the game was being held and robbed the patrons at gunpoint. PSR ¶ 38. The occupants of the apartment, an older woman, her son, his wife and a female cousin were forced to strip naked during the robbery. The defendant and a co-conspirator then took the wife into a separate room and repeatedly raped her. <u>Id</u>. In addition, another co-conspirator sexually assaulted the cousin. <u>Id</u>.

2

    5.  The Robbery in Yorktown (Count 1 (RICO Acts 10A, 10B), Count 2)

On September 7, 1990, the defendant and three co-conspirators went to a residence in Yorktown, New York, to rob it. The defendant and others carried firearms and robbed the occupants of the residence of more than $20,000 in cash. PSR ¶ 39.

    6.  The Green Dragon Extortion Scheme (Count 1, Count 2, Count 3, Count 21, Count 22)

The defendant also participated in extortion activity carried out by the Green Dragons in Queens, New York. The defendant would collect money once a week from local businesses and turn the money over to Green Dragons leadership who would use it to fund the operations of the gang. PSR ¶ 41. All of the establishments that the Green Dragons extorted money from were Asian-owned businesses. The Green Dragons targeted these businesses because they believed Asians would be most intimated by the gang's violence and reluctant to report the crimes to the police. PSR ¶ 42. For example, in August 1990, the defendant and two co-conspirators sought to collect thousands of dollars in extortion money from the manager of a local travel agency. The defendant and his co-conspirators confronted the manager and threatened to harm him if the money was not paid. PSR ¶ 49.

  B.  <u>Sentencing</u>

On October 7, 1992, then-District Judge Reena Raggi sentenced the defendant to life imprisonment on Counts 1, 2, 4, 6, and 7, all to run concurrently. Judge Raggi also sentenced the defendant to 20 years imprisonment on Counts 21 and 22, and 10 years' imprisonment on Counts 3 and 8, all to run concurrently. (ECF No. 80). On November 13, 1995, the Second Circuit affirmed the defendant's convictions and the custodial sentences that Judge Raggi imposed. (ECF No. 214). The defendant now moves, pursuant to Title 18, United States Code, Section 3582(c), for a reduction in sentence pursuant to what he alleges was his minimal role in the crimes for which he was convicted. Specifically, the defendant claims that an amendment to the Guidelines clarifying eligibility for a reduction in Guidelines ranges for individuals with minor or minimal roles in their crimes entitles him to be re-sentenced. For the following reasons, the Court should deny the defendant's motion.

II.  <u>Amendment 794 Is Not Retroactive</u>

Section 3B1.2 of the Guidelines instructs courts to decrease a defendant's offense level if the defendant was a "minimal" or "minor participant" in the criminal activity. See generally United States v. Algahaim, 842 F.3d 796, 799-800 (2d Cir. 2016). "Amendment 794, which became effective in November 2015, . . . modified significantly . . . the factors that a district court should consider in deciding whether to apply the reduction." United States v. Soborski, 708 F. App'x 6, 10 (2d Cir. 2017). Instead of comparing a defendant to "the average participant among 'the universe of persons participating in similar crimes,'" Amendment 794 directed courts to analyze the defendant's role in relation to

3

"those 'participating in the criminal activity at issue in the defendant's case.'" Id. at 11 (quoting U.S.S.G. app. C, amend. 794 (amending U.S.S.G. § 3B1.2 cmt. n.3(C)) (alteration omitted)).

Citing Amendment 794, the defendant now seeks a reduction of his sentence. Section 3582(c)(2) does, in fact, provide a vehicle for some defendants to challenge their previously imposed sentences based on changes to the Guidelines. Nevertheless, "[a] reduction in the defendant's term of imprisonment is not . . . authorized under 18 U.S.C. § 3582(c)(2) if[] [n]one of the amendments listed in [U.S.S.G. § 1B1.10(d)] is applicable to the defendant."

The defendant does not contend that Amendment 794 is listed in Guidelines Section 1B1.10(d), nor could he. Nevertheless, he argues that Amendment 794 is "retroactive." (Def. Mem. at 6-7). In support of this proposition, the defendant cites a line of cases interpreting amendments to the Guidelines in the initial sentencing or on direct appeal of a sentence to determine whether the amendments are "clarifying" or "substantive." Cf. United States v. Brooks, 732 F.3d 148, 149 (2d Cir. 2013) (per curiam); United States v. Sabbeth, 277 F.3d 94, 95-96 (2d Cir. 2002). This distinction is irrelevant, however, in the context of a motion pursuant to Section 3582(c)(2). See United States v. Ramirez, 2017 WL 2683987, at *2 (10th Cir. June 21, 2017) (summary order) ("[W]hether an amendment to the guidelines is clarifying or substantive goes to whether a defendant was correctly sentenced . . . not to whether a correct sentence . . . has subsequently been reduced by an amendment to the guidelines and can be modified in a proceeding under § 3582(c)(2))." (quoting United States v. Torres-Aquino, 334 F.3d 939, 940-41 (10th Cir. 2003)).

Courts interpreting the availability of a motion pursuant to Section 3582(c)(2) based on Amendment 794 have universally found that the Amendment cannot provide a basis for such a motion. Ramirez, 2017 WL 2683987, at *2 ("[Defendant] is ineligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) because Amendment 794 is not among the covered amendments listed in U.S.S.G. § 1B1.10(d)."); United States v. McNeill, 671 F. App'x 67, 68 (4th Cir. 2016) ("Amendment 794 cannot be given retroactive effect in a § 3582(c)(2) proceeding."); Batista v. United States, No. 14-CV-895 (DLI), 2017 WL 3700889, at *5 (E.D.N.Y. Aug. 25, 2017) (same); Winters v. United States, No. 16-CV-24, 2017 WL 3172737, at *3 (N.D. Tex. June 16, 2017) ("[B]ecause Amendment 794 is not listed in § 1B1.10(d), this Court may not apply the Amendment retroactively to provide [the defendant] with relief."); Calderon v. United States, No. 02-CR-1082 (NRB), 2016 WL 7742746, at *1 (S.D.N.Y. Dec. 27, 2016) ("Amendment 794 is not listed in § 1B1.10(d) and therefore does not apply retroactively.") (collecting cases); United States v. Perez, No. 08-CR-429 (DLC), 2016 WL 7742745, at *1 (S.D.N.Y. Dec. 19, 2016) (same).

III.   Defendant Was Not a Minor or Minimal Participant in Criminal Activity

Even if Amendment 794 somehow provided the Court with a vehicle to reconsider whether the defendant is entitled to a minimal role reduction based on his role in

4

the instant offenses, the defendant would not be entitled to such a benefit. "'A defendant who claims minor participation must establish by a preponderance of the evidence that he or she is entitled to a reduction due to his or her reduced level of culpability.'" United States v. Eskamp, 2016 WL 4191126, at *2 (2d Cir. Aug. 5, 2016) (quoting United States v. Soto, 959 F.2d 1181, 1187 (2d Cir. 1992)).

The defendant is not a minor or minimal participant because of his role in three murders and a rape at gunpoint. The defendant planned and carried out all three murders with co-conspirators to further the illegal aims of the Green Dragons. The defendant knew that he was driving co-conspirators so that they could commit multiple murders. The defendant was also a participant in an armed robbery where he forced victims to strip naked. He and a co-conspirator then repeatedly raped one of the women who was present. The defendant was also directly involved in Green Dragon extortion activities. Irrespective of whether he was a leader of the gang, the defendant's conduct was sufficiently culpable that it would strain credulity to describe him as a "minor" or "minimal" participant.

For the foregoing reasons, the government respectfully requests that the defendant's motion for a reduced sentence be denied and that a certificate of appealability and in forma pauperis status be denied for any appeal, which would lack an "arguable basis in law or fact." Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (per curiam) (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)).

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:   /s/ Francisco J. Navarro
        Francisco J. Navarro
        Assistant United States Attorney
        (718) 254-6007

cc:     Chiang T. Cheng, No. 38048-053
       USP Canaan
       P.O. Box 300
       Waymart, PA 18472 (by certified mail)